**UNITED STATES DISTRICT COURT**
**DISTRICT OF CONNECTICUT**

| | | |
|---|---|---|
| ICR, LLC, | : | |
| Plaintiff, | : | CIVIL CASE NO. |
| | : | 3:22-CV-00933 (JCH) |
| v. | : | |
| | : | |
| NEPTUNE WELLNESS SOLUTIONS, INC., | : | |
| Defendant. | : | MARCH 25, 2024 |

**RULING ON PLAINTIFF'S MOTION FOR PARTIAL SUMMARY JUDGMENT (DOC. NO. 42)**

**I.     INTRODUCTION**

ICR, LLC ("ICR") brings this lawsuit under Connecticut state law, pursuant to this court's diversity jurisdiction, against Neptune Wellness Solutions, Inc. ("Neptune").  See Complaint ("Compl."), Ex. A. to Notice of Removal (Doc. No. 1-1).  ICR alleges breach of contract, breach of an implied contract, unjust enrichment, and quantum meruit.  Id. Neptune has raised the affirmative defenses of equitable estoppel, breach of contract, and unjust enrichment.  See Amended Answer ("Am. Answer") (Doc. No. 30).

ICR has moved for partial summary judgment as to its breach of contract claim. See Plaintiff's Motion for Summary Judgment ("Pl.'s Mot.") (Doc. No. 42).  Neptune opposes the Motion.  See Defendant's Memorandum of Law in Opposition to Plaintiff's Motion for Summary Judgment ("Def.'s Opp.") (Doc. No. 51).  For the reasons set forth below, the Motion is denied.

## II.    BACKGROUND

### A.    Factual Background[1]

On February 1, 2020, ICR and Neptune entered into a Consulting Agreement (hereinafter "the Agreement").  See Defendant's Local Rule 56(a)2 Statement ("Def.'s LR 56(a)2 Stmt.") ¶ 1 (Doc. No. 52); Plaintiff's Local Rule 56(a)1 Statement ("Pl.'s LR 56(a)1 Stmt.") ¶ 1 (Doc. No. 42-3); Consulting Agreement, Attach. 1 to Declaration of Anton Nicholas ("Nicholas Decl."), Pl.'s Ex. A (Doc. No. 42-2).  As part of the Agreement, ICR agreed to provide Neptune with various consulting services in exchange for $25,000 monthly payments.  See Consulting Agreement at 1.  The Agreement provided that, "[f]ollowing the Initial Term, th[e] Agreement shall renew for a subsequent six month term until terminated by either party", and that "th[e] Agreement may be terminated by either party upon sixty (60) days prior written notice following the Initial Term."  Id. at 1.  Notably, the Agreement also contained a "Standard Terms and Conditions" section.  Id. at 4-5.  The Terms and Conditions provided, in part, that "[s]hould either party remain in default of any of its obligations herein following fifteen (15) days' notice thereof, the non-defaulting party may terminate this Agreement and may also recover all sums due hereunder . . . ."  Id. at 4.  The Terms and Conditions also provided the following:

> Any notice or communication required or permitted under this Agreement shall be in writing and shall be deemed received (i) on the date personally delivered, (ii) the next day after sending if sent by e-mail, facsimile, Federal Express or any other next-day carrier service, or (iii) the third day after mailing via first-class mail, return receipt requested, to a party at the address specified in Article I or such other address as the parties may designate from time to time.

---

[1] The court draws primarily from the parties' Local Rule 56(a) Statements and supporting Exhibits in summarizing the material facts.  As it must, the court construes all disputed facts in the light most favorable to Neptune, the nonmoving party.  Unless otherwise noted, the facts are undisputed.

Id.

The parties' Agreement renewed automatically for an additional six-month term on July 31, 2020. See Def.'s LR 56(a)2 Stmt. ¶ 2; Pl.'s LR 56(a)1 Stmt. ¶ 2. Throughout the term of the Agreement, ICR sent monthly invoices of $25,000 to Neptune. See Def.'s LR 56(a)2 Stmt. ¶ 4; Pl.'s LR 56(a)1 Stmt. ¶ 4. Neptune did not pay ICR the monthly fees for September, October, November, and December 2020. See Def.'s LR 56(a)2 Stmt. ¶ 8; Pl.'s LR 56(a)1 Stmt. ¶ 8. The parties dispute whether ICR adequately performed its contractual obligations during this period. Neptune asserts that it "complained to ICR about its poor performance under the Consulting Agreement" during these four months. See Def.'s LR 56(a)2 Stmt. ¶ 5; accord January 4, 2021 Email from Toni Rinow to Sean Flanagan, Dylan Howard, Christopher Piazza, Felicia Williams ("January 4, 2021 Email"), Def.'s Ex. J to Declaration of Christopher Piazza ("Piazza Decl."), at 1 (Doc. No. 51-1) (email from Neptune's Chief Financial Officer to ICR officials stating that "[f]or the last 4 months [Neptune] ha[s] received no support" and that, "[w]ith regards to PR, the effort was limited to release the press releases that [Neptune] wrote").[2] The parties do not dispute, however, that Neptune

---

[2] As part of its Exhibits, Neptune has proffered various internal emails from Scott Van Winkle ("Van Winkle"), who was ICR's investor relations representative to Neptune. See Piazza Decl. ¶ 4. In one email, Van Winkle expresses frustration with Neptune officials, stating that Neptune's Chief Financial Officer "said [he] didn't do something that [he] actually did." See September 23, 2020 Email from Scott Van Winkle to John Mills, Def.'s Ex. A to Piazza Decl. (Doc. No. 51-1). The emails also include communications that Van Winkle received from investors. See November 2, 2020 Email from Scott Van Winkle to John Mills and Ashley Makowski, Def.'s Ex C to Piazza Decl. (Doc. No. 51-1); November 5, 2020 Email from Scott Van Winkle to John Mills & Ashley Makowski, Def.'s Ex C to Piazza Decl. (Doc. No. 51-1). It is unclear, from the Exhibits provided, whether Van Winkle responded to these investors.

Neptune has also provided a copy of an email from Van Winkle to John Mills—another ICR employee, see Piazza Decl. ¶ 6—containing a voicemail that purportedly came from a shareholder at Neptune. See October 26, 2020 Email from Scott Van Winkle to John Mills, Def.'s Ex. B to Piazza Decl. (Doc. No. 51-1). According to the Declaration of Christopher Piazza, Neptune's Senior Counsel, the caller stated that he was "a shareholder in Neptune Wellness" who was "calling for the fifth time, and the

never provided ICR with a "formal" notice of default and an opportunity to cure its ostensible default of its contractual obligations.  Def.'s LR 56(a)2 Stmt. ¶ 5; Pl.'s LR 56(a)1 Stmt. ¶ 5.[3]

On December 1, 2020, Neptune provided ICR with a written notice that it would terminate the Agreement in sixty days, effective January 31, 2021.  See Def.'s LR 56(a)2 Stmt. ¶ 10; Pl.'s LR 56(a)1 Stmt. ¶ 10.  On December 29, 2020, Sean Flanagan ("Flanagan"), ICR's associate counsel, emailed Neptune officials, including its Chief Financial Officer ("CFO"), stating that, "after 5 months of non-payment and a wholesale failure to respond to our inquiries about the same, we've concluded that [Neptune] has no intention to honor its agreement with ICR."  See December 29, 2020 Email from Sean Flanagan to Toni Rinow & Dylan Howard ("December 29, 2020 Email"), Def.'s Ex. H to Piazza Decl. (Doc. No. 51-1).  Flanagan requested payment for Neptune's outstanding balance and warned that, "[o]therwise . . . [ICR would] terminate services and remove the company as a participant in the upcoming ICR Conference."  Id.  Two days later, after receiving no response, ICR removed Neptune from the upcoming conference.  See December 31, 2020 Email from John Mills to Tim Bishop, Caitlin Burke, & Ashley Makowski ("December 31, 2020 Email"), Def.'s Ex. I to Piazza Decl., at

---

third today"; the caller further stated that he "would like [Van Winkle] to get back to [him]."  Piazza Decl. ¶ 7.

[3] In its Local Rule 56(a)2 Statement, Neptune disputes ICR's assertion that it failed to provide written notice and an opportunity to cure.  Specifically, Neptune states that, although it "did not send a formal notice of default," it nonetheless notified ICR of its poor performance, and it further notes that "section 4 of the Standard Terms and Conditions attached to the Consulting Agreement does not state that a notice of default must be in writing."  Def.'s LR 56(a)2 Stmt. ¶ 5.

However, ICR's Statement of Fact posits only that "Neptune did not provide ICR with a written notice of default and an opportunity to cure."  Pl.'s LR 56(a)1 Stmt. ¶ 5 (emphasis added).  Neptune does not dispute the specific assertion that it never provided ICR with a written notice of default or an opportunity to cure.  The material fact is therefore deemed admitted.  See D. Conn. L. Civ. R. 56(a)(2)(i)-(3).

1 (Doc. No. 51-1).  On January 4, 2021, ICR provided Neptune with a formal written notice of default stating that Neptune owed ICR $104,000 and providing Neptune with the opportunity to "satisfy [its] indebtedness" by paying the $104,000 by January 14, 2021, which Neptune did not pay.  See Def.'s LR 56(a)2 Stmt. ¶¶ 11-12; Pl.'s LR 56(a)1 Stmt. ¶¶ 11-12; Notice of Default Letter, Attach. 4 to Nicholas Decl., at 1 (Doc. No. 42-2).

B.    Procedural Background

On June 21, 2022, ICR filed suit against Neptune in the Connecticut Superior Court.  See Compl.  Counts One of ICR's Complaint alleges breach of contract.  See id. at ¶¶ 1-7.  Count Two alleges breach of implied contract.  See id. at ¶¶ 8-12.  Count Three alleges unjust enrichment, see id. at ¶¶ 13-15, while Count Four seeks relief under the doctrine of quantum meruit, see id. at ¶¶ 16-18.

Neptune removed the case to this court on July 26, 2022.  See Notice of Removal (Doc. No. 1).  Neptune filed its original Answer to ICR's Complaint—with its three Affirmative Defenses of equitable estoppel, breach of contract, and unjust enrichment—on September 14, 2022.  See Answer (Doc. No. 17).  On October 4, 2022, ICR moved to strike Neptune's Affirmative Defenses, see Motion to Strike Affirmative Defenses (Doc. No. 21), which this court granted in part, without prejudice to Neptune amending its Answer.  On February 23, 2023, Neptune filed an Amended Answer with the same Affirmative Defenses.  See Am. Answer.

On July 14, 2023, ICR moved for partial summary judgment as to Count One of its Complaint, as well as Neptune's Second Affirmative Defense of breach of contract. See Pl.'s Mot.  Neptune opposes the Motion.  See Def.'s Opp.

III.    **LEGAL STANDARD**

A motion for summary judgment may be granted only when the moving party can establish that "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a); Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 256 (1986); Wright v. N.Y. State Dep't of Corr., 831 F.3d 64, 71-72 (2d Cir. 2016).  If the moving party satisfies this burden, the nonmoving party must set forth specific facts demonstrating that there is indeed "a genuine issue for trial." Wright v. Goord, 554 F.3d 255, 266 (2d Cir. 2009).  A genuine issue exists where "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." Cross Commerce Media, Inc. v. Collective, Inc., 841 F.3d 155, 162 (2d Cir. 2016).  Unsupported allegations do not create a material issue of fact and cannot overcome a properly supported motion for summary judgment.  See Weinstock v. Columbia Univ., 224 F.3d 33, 41 (2d Cir. 2000).  In assessing the record to determine whether there are disputed issues of material fact, the trial court must "resolve all ambiguities and draw all inferences in favor of the party against whom summary judgment is sought." LaFond v. Gen. Physics Servs. Corp., 50 F.3d 165, 175 (2d Cir. 1995).

IV.    **DISCUSSION**

ICR contends that it is entitled to summary judgment in its favor as to Count One, as well as Neptune's second affirmative defense of breach of contract, because (1) there is no genuine dispute of material fact as to whether Neptune breached the Consulting Agreement, and (2) there is no genuine dispute of material fact that Neptune cannot prove its Second Affirmative Defense of breach of contract.  See Pl.'s Mot.  "The

elements of a breach of contract claim are the formation of an agreement, performance by one party, breach of the agreement by the other party, and damages." See Meyers v. Lingston, Adler, Pulda, Meiklejohn & Kelly, P.C., 311 Conn. 282, 291 (2014). "Whether there was a breach of contract is ordinarily a question of fact." See Paulus v. LaSala, 56 Conn. App. 139, 153 (1999).

The parties do not dispute that the Agreement constituted a valid and binding contract, and they both appear to agree that the terms of the Agreement are clear and unambiguous. The parties also do not dispute that Neptune failed to make the monthly payments of $25,000 to ICR from September 2020 to January 2021. The parties do, however, dispute the second element: whether ICR performed its obligations under the Agreement. Neptune contends that ICR failed to substantially perform its contractual obligations during the relevant period. See Def.'s Op. at 7-9. ICR disputes that it failed to perform its contractual obligations under the Agreement and argues that, in any event, this alleged nonperformance is irrelevant because, under controlling Connecticut case law, Neptune's "failure to provide written notification of a breach and an opportunity to cure in accordance with the terms of an agreement constitutes the waiver of nonperformance as a defense to a breach of contract claim." See Plaintiff's Memorandum of Law in Support of Motion for Summary Judgment ("Pl.'s Mem.") at 10-11 (Doc. No. 42-1) (citing Weiss v. Smulders, 313 Conn. 227 (2014)).

The court disagrees with ICR's argument that, because Neptune failed to provide it with written notice of default and an opportunity to cure, ICR is warranted judgment as a matter of law as to its breach of contract claim. In Weiss v. Smulders—on which ICR heavily relies—the Connecticut Supreme Court, in addressing a defendant's

counterclaim against a plaintiff for breach of contract, held that "the plaintiffs waived their right to assert a material breach of contract in defense of the defendants' counterclaim when they failed to notify the defendants of the alleged breaches and failed to provide them with an opportunity to cure such breaches."   313 Conn. 227, 265 (2014).  The holding in <u>Weiss</u> addressed whether a party claiming prior material breach as a defense to another party's breach of contract claim could rely on that defense if they failed to provide the other party with notice and an opportunity to cure, as required by the contract.  <u>See</u> <u>id.</u> at 263 n.17.  In this court's view, <u>Weiss</u> is distinguishable from the case at bar.

First, the facts of <u>Weiss</u> are distinguishable.  In <u>Weiss</u>, the counterclaim-defendant argued that the counterclaim-plaintiff committed material breach of the contract by "ma[king] direct sales to [outside] customers . . . in breach of the provisions in the distribution agreement . . . ."  <u>Id.</u> at 262-63.  Here, Neptune asserts that ICR failed to perform almost all its contractual obligations from September 2020 to January 2021.  <u>See</u> Def.'s Opp. at 8-9.  The counterclaim-defendants made no such assertions in <u>Weiss</u>.  Indeed, in <u>Weiss</u>, the lower court determined, based on the "evidence in the record", that the counterclaim-plaintiff had performed its core obligations under the contract.  <u>See</u> <u>Weiss v. Smulders</u>, No. HHDCV075010263S, 2012 WL 2149477, at *11 (May 11, 2012) (reiterating the four elements of a breach of contract action, including "performance by one party," in analyzing defendant's counterclaim, and finding that the defendant performed its obligations by "provid[ing]" the requisite "products . . . to the plaintiffs for distribution").

Second, the Weiss Court appears to have treated the counterclaim-plaintiff's allegations of material breach as a special defense.  See Weiss, 313 Conn. at 263 n.17. "[T]he party raising a special defense has the burden of proving the facts alleged therein."  U.S. Bank, Nat'l Assoc. v. Moncho, 203 Conn. App. 28, 46 (2021).  Here, for the plaintiff to prevail on Count One at the summary judgment stage, the court must conclude, as a matter of law, that ICR has proven that there are no material issues of fact as to each of the four elements of its breach of contract claim, including its own performance.  The burden, therefore, is on the plaintiff.  See SLC Turnberry, Ltd. v. The Am. Golfer, Inc., 240 F.R.D. 50, 55 (D. Conn. 2007) ("[A]n element of a breach of contract claim is that the party seeking to enforce a contract or seek damages for breach thereof must have been performing its contractual obligations . . . and thus defendants' claim that plaintiffs were not so performing . . . is an essential element of plaintiffs' claim."); accord DiBella v. Widlitz, 207 Conn. 194, 200 (1988) (reaffirming that, "in an action by a seller of services . . . '[o]ne cannot recover upon a contract unless he has fully performed his own obligation under it, has tendered performance, or has some legal excuse for not performing'" (quoting Auto. Ins. Co. v. Model Fam. Laundries, Inc., 133 Conn. 433, 437 (1947))).[4]

As noted above, Neptune contends that ICR performed virtually none of its contractual obligations from September 2020 to January 2021.  ICR has proffered little evidence, in connection with its Motion, to show that it performed its contractual obligations.  Indeed, ICR's Motion for Summary Judgment relies almost entirely on

---

[4] ICR does not appear to argue that a defendant's failure to provide notice of default and an opportunity to cure constitutes a "legal excuse for not performing", see DiBella, 207 Conn. at 200, and this court cannot locate any controlling Connecticut case law that so holds.

Neptune's failure to provide it with written notice and an opportunity to cure. Neptune has also provided some evidence that, viewed in the light most favorable to it, could provide a basis for a reasonable jury to find that the plaintiff did not adequately perform its consulting obligations, as required by the contract. See January 4, 2012 Email (email from Neptune's CFO to ICR officials stating that "[f]or the last 4 months [Neptune] ha[s] received no support" and that, "[w]ith regards to PR, the effort was limited to release the press releases that [Neptune] wrote").[5]

"The issue of whether a party has substantially performed is usually a question of fact and should be decided as a matter of law only where the inferences are certain." Merrill Lynch & Co. Inc. v. Alegheny Energy, Inc., 500 F.3d 171, 185-86 (2d Cir. 2007). Given the very thin factual record before it, as well as this court's conclusion that Weiss is distinguishable from the case at bar, the court cannot conclude that, in this specific instance, ICR is automatically entitled to judgment as a matter of law because of Neptune's failure to provide it with a notice of default and opportunity to cure. See Woodman Design Grp. Inc. v. Homesteads of Newtown, LLC, No. 01-CV-2029, 2003 WL 22272596, at *3 (D. Conn. Sept. 30, 2003) (holding that "it is not appropriate, on a motion for summary judgment, for the court to determine the parties' dispute whether

---

[5] In its Reply Memorandum, the plaintiff contends that the Piazza Declaration, to which Neptune's Exhibits are attached, fails to comply with Rule 56(c)(4) of the Federal Rules of Civil Procedure—and thus fails to raise a genuine issue of material fact—because it does not make clear how Attorney Piazza "obtained personal knowledge and is competent to testify on the matters stated" therein, and because it contains hearsay. See Plaintiff's Reply Memorandum to Defendant's Opposition to Motion for Summary Judgment, at 3-4 (Doc. No. 54-1).

The court agrees with ICR that certain discreet statements made by Attorney Piazza, such as his testimony regarding ICR's alleged lack of performance, see Piazza Decl. ¶ 9, do not appear to be supported by his own personal knowledge. Nonetheless, Neptune has also proffered additional admissible evidence of ICR's alleged nonperformance, in the form of Exhibits of various internal emails, that could provide a basis for a reasonable jury to find that ICR did not substantially perform its contractual obligations.

[plaintiff] substantially performed its obligations under the contact" and that, "when contested, the question whether a party substantially performed under a contract is a genuine issue of material fact that must be resolved by a jury"); Nature's Plus Nordic A/S v. Nat. Organics, Inc., 980 F. Supp. 2d 400, 412 (E.D.N.Y. 2013) (holding, in the context of an advertising contract, that, "to prevail on a breach of contract claim, a plaintiff must establish performance of each of its obligations under the contract," and finding that a genuine issue of material fact as to whether plaintiff performed its obligations foreclosed partial summary judgment on plaintiff's breach of contract claim).[6]

Moreover, applying Weiss as ICR requests would create an untenable and illogical situation regarding damages.  If the court were to embrace ICR's theory that it need not show its own performance—that is, that it can recover under the contract even if it has not actually performed—ICR would effectively be permitted to receive damages that it is not, in fact, owed.  Such an application of Weiss would contravene the rule that a plaintiff "[can]not recover contract damages under [an] agreement" if it "[did not] perform fully, did not tender performance, and did not have a valid legal excuse for nonperformance."  David M. Somers & Assocs., P.C. v. Busch, 283 Conn. 396, 406 (2007).

Summary judgment as to ICR's breach of contract claim is further unwarranted because there is a genuine issue of material fact as to whether ICR itself adequately

---

[6] Although the Nature's Plus court analyzed New York contract law, the elements for breach of contract are essentially the same under both Connecticut law and New York law.  Compare Meyers, 311 Conn. at 291 ("The elements of a breach of contract claim [under Connecticut law] are the formation of an agreement, performance by one party, breach of the agreement by the other party, and damages."), with Nature's Plus, 980 F. Supp. 2d at 412 (stating that the elements of a breach of contract claim under New York law are "the existence of a contract, the plaintiff's performance under the contract, the defendant's breach of that contract, and resulting damages" (quoting Nat'l Gear & Piston, Inc. v. Cummins Power Sys., LLC, 861 F. Supp. 2d 344, 355 (S.D.N.Y. 2012)).

complied with the Consulting Agreement's notice of default and opportunity to cure provision.  Neptune has proffered evidence that, on December 29, 2020, ICR's associate counsel sent an email to Neptune officials stating as follows:

> Unfortunately, after 5 months of non-payment and a wholesale failure to respond to our inquiries about the same, we've concluded that [Neptune] has no intention to honor its agreement with ICR.  While disappointing and somewhat hard to understand, we acknowledge that there might possibly be miscommunications within your organization that have contributed to the failure to resolve the outstanding balance.  If that's the case, please advise, together with a confirmation that payment for the outstanding balance has been issued.  <u>Otherwise, and without prejudice to any other rights available to ICR, we will terminate services and remove the company as a participant in the upcoming ICR Conference.</u>

<u>See</u> December 29, 2020 Email (emphasis added).  Neptune has also proffered evidence that, two days later, ICR disinvited Neptune from its upcoming conference. <u>See</u> December 31, 2020 Email.  ICR did not send its "formal notice of default" until January 4, 2021, after it removed ICR as a participant at its upcoming conference.  <u>See</u> Notice of Default Letter.  Viewing this evidence in the light most favorable to the plaintiff, as it must, the court concludes that a reasonable jury could potentially find that ICR did not adequately comply with the terms of the notice of default and opportunity to cure provision, which does not permit a party to terminate the Agreement until fifteen days after said party provides the breaching party with a written notice of default and an opportunity to cure.  <u>See</u> <u>Weiss</u>, 313 Conn. at 263 (noting that the trial court "reject[ed] . . . the plaintiffs' breach of contract claim on the basis of its finding that the plaintiffs had failed to abide by the terms of the [contract] for notification of breach").  As such, there is a genuine issue of material fact as to whether ICR can succeed on its breach of contract claim, which further warrants denial of ICR's Motion for Summary Judgment.

Finally, the court also cannot grant summary judgment as to Count One because, as Neptune notes, in its Opposition, ICR did not move for summary judgment as to its other affirmative defenses of equitable estoppel and unjust enrichment.  Nor did it raise any arguments as to these affirmative defenses in its accompanying Memorandum. Rather, ICR first raised the argument that both defenses "do not create a genuine issue of material fact with respect to Plaintiff's breach of contract claim" in its Reply Memorandum.  See Plaintiff's Reply Memorandum to Defendant's Opposition to Motion for Summary Judgment, at 6-7 (Doc. No. 54-1).  "It is well settled that courts should not consider arguments first raised in a party's reply brief which afford no opportunity for response from the opposing party."  Haywin Textile Prods., Inc. v. Int'l Fin. Inv., 137 F. Supp. 2d 431, 434 n.2 (S.D.N.Y 2001).  Because the plaintiff did not raise or address these issues in its Motion, the court cannot grant it summary judgment as to either defense.

## V.    CONCLUSION

For the reasons set forth above, the plaintiff's partial Motion for Summary Judgment (Doc. No. 42) is denied.


**SO ORDERED.**

Dated at New Haven, Connecticut this 25th day of March 2024.


 /s/ Janet C. Hall
Janet C. Hall
United States District Judge