UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | | |
|---|---|---|
| ICR, LLC,<br>    Plaintiff, | :<br>:<br>: | CIVIL CASE NO.<br>3:22-CV-00933 (JCH) |
| v. | :<br>: | |
| NEPTUNE WELLNESS SOLUTIONS, INC.,<br>    Defendant. | :<br>: | APRIL 22, 2024 |

**RULING ON PLAINTIFF'S MOTION FOR RECONSIDERATION (DOC. NO. 61)**

Plaintiff ICR, LLC ("ICR") seeks reconsideration of this court's Ruling denying partial summary judgment as to its breach of contract claim against defendant Neptune Wellness Solutions, Inc. ("Neptune"). See Plaintiff's Motion for Reconsideration ("Pl.'s Mot.") (Doc. No. 61). For the reasons set forth below, the Motion is denied.

"The major grounds justifying reconsideration are an intervening change of controlling law, the availability of new evidence, or the need to correct a clear error or prevent manifest injustice." Virgin Atl. Airways, Ltd. v. Nat'l Mediation Bd., 956 F.2d 1245, 1255 (2d Cir. 1992) (quoting 18 C. Wright, A. Miller & E. Cooper, Federal Practice & Procedure § 4478, at 790). A motion for reconsideration "is not a vehicle for relitigating old issues, presenting the case under new theories, securing a rehearing on the merits, or otherwise taking a second bite at the apple." Analytical Survs., Inc. v. Tonga Partners, 684 F.3d 36, 52 (2d Cir. 2012) (internal quotation marks and citation omitted). Accordingly, motions for reconsideration will generally be denied unless the movant "can point to controlling decisions or data that the court overlooked—matters, in other words, that might reasonably be expected to alter the conclusion reached by the court." Shrader v. CSX Transp., Inc., 70 F.3d 255, 257 (2d Cir. 1995); accord D. Conn.

1

L. Civ. R. 7(c) ("Motions for reconsideration shall not be routinely filed and shall satisfy the strict standard applicable to such motions. Such motions will generally be denied unless the movant can point to controlling decisions or data that the court overlooked in the initial decision or order.").

ICR primarily seeks reconsideration on the grounds that (1) it has met its burden of showing performance and (2) the court's Ruling "is based upon inadmissible hearsay testimony and exhibits." See Pl.'s Mot. at 5-8. As a threshold matter, the court notes that ICR did not argue, in its original Motion for Summary Judgment, that it had met its burden of proving performance.[1] Rather, ICR's Motion for Summary Judgment argued that Neptune's failure to provide notice and an opportunity to cure rendered "ICR's alleged nonperformance, if any, . . . legally irrelevant." See Plaintiff's Memorandum in Support of Motion for Summary Judgment, at 13 (Doc. No. 42-1).

Nonetheless, the court reiterates its prior holding that ICR has not met its burden of showing that there is no genuine issue of material fact as to the performance element of its breach of contract claim. To support its contention that it has shown performance, ICR points to a line of testimony in the Declaration of Anton Nicholas, ICR's "Managing Partner of the Consumer POD":

> [F]or September, October, and November and December of 2020, ICR continued to provide the consulting services pursuant to the Consulting Agreement. For example, we had a standing telephone conference between our team and Neptune scheduled on every Thursday, between 3:30 and 4:00 PM.

Declaration of Anton Nicholas ¶¶ 1, 13 (Doc. No. 42-2).

---

[1] In addition, the court notes that the Ruling on ICR's Motion also denied summary judgment on other grounds, including that "ICR did not move for summary judgment as to [Neptune's] other affirmative defenses of equitable estoppel and unjust enrichment." See Ruling at 12-13 (Doc. No. 58).

2

Even assuming <u>arguendo</u> that Nicholas' attestation was sufficient for ICR to meet its initial burden on summary judgment,[2] the court still concludes that there is evidence in the record sufficient to create a genuine issue of material fact as to performance. First, the court disagrees with ICR's contention that it must exclude the Piazza Declaration from its consideration because it fails to establish that Piazza has personal knowledge as to the matters on which he testifies. At all relevant times, Piazza was Neptune's Senior Counsel, involved in the initial contract negotiations with ICR and the subsequent termination of said contract—indeed, the record establishes that he was the individual who provided ICR with Neptune's December 1, 2020, Notice of Termination. <u>See</u> Declaration of Christopher Piazza ("Piazza Decl.") ¶¶ 1-2 (Doc. No. 51-1); December 1, 2020 Notice of Termination Email, Def.'s Ex. E to Piazza Decl. (Doc. No. 51-1). Under these apparent facts, the court cannot say, at this juncture, that no "reasonable trier of fact could believe the witness had personal knowledge" of the consulting services and ICR's provision, or lack thereof, of those services. <u>Folio Impressions, Inc. v. Byer Cal.</u>, 937 F.2d 759, 764 (2d Cir. 1991). To be sure, the court's Ruling noted that "certain discreet statements made by Attorney Piazza" about ICR's alleged nonperformance do not appear to be supported by his own personal knowledge. <u>See</u> Ruling at 10 (Doc. No. 58). More specifically, for example, Piazza references conversations between Neptune's Chief Financial Officer ("CFO") and ICR officials regarding ICR's alleged nonperformance even though he, apparently, was not a

---

[2] Indeed, the court is skeptical that Nicholas' testimony, standing alone, suffices to meet ICR's initial burden. Holding weekly telephone conferences, for example, is not one of ICR's enumerated contractual obligations, and the Declaration does not make clear why these weekly telephone conferences indicate that ICR substantially performed its obligations during the relevant period.

3

participant in these conversations.  See Piazza Decl. ¶ 9; accord id. at ¶ 18 (attesting that it is his "understanding from Ms. Rinow, who attended weekly status calls with ICR . . . that ICR's status reports on those calls were the same week to week").  Such testimony would also be hearsay if offered for the truth of the matter asserted therein.  While the court excludes such statements from its consideration, it cannot conclude, at the summary judgment stage, that the entire Declaration must be excluded due to a lack of personal knowledge.[3]

Second, the court reiterates its prior conclusion that "Neptune has also proffered additional admissible evidence of ICR's alleged nonperformance, in the form of Exhibits of various internal emails, that could provide a basis for a reasonable jury to find that ICR did not substantially perform its contractual obligations."  See Ruling at 10 n.8.  Although ICR contends that the January 2021 email from Toni Rinow constitutes inadmissible hearsay and must be excluded, the email could be admissible if offered to show that Neptune officials complained about ICR's alleged nonperformance of its contractual obligations.[4]  See January 4, 2021 Email from Toni Rinow to Sean Flanagan, Dylan Howard, Christopher Piazza, Felicia Williams, Def.'s Ex. J to Piazza Decl., at 1 (Doc. No. 51-1) (email from Neptune's CFO to ICR officials stating that "[f]or the last 4 months [Neptune] ha[s] received no support"); accord Defendant's Memorandum in Opposition to Plaintiff's Motion for Summary Judgment, at 12 (Doc. No. 51) (citing Rinow's email in support of the assertion that it "notified ICR of its poor

---

[3] If Neptune cannot show, at trial, that Piazza has personal knowledge of ICR's alleged nonperformance, the court will not permit him to testify.

[4] The court notes that it is not clear, from the existing record, whether Neptune plans to have Rinow testify at trial.

4

performance"). Moreover, there are other Exhibits in the record, in the form of admissible emails, that raise a genuine issue of material fact as to ICR's performance. These Exhibits include a September 2020 email from ICR's investor relations representative to Neptune stating, inter alia, that he is "done with Neptune", that he "can no longer defend their stupidity to investors", and that Neptune's CFO complained about his performance, see September 23, 2020 Email from Scott Van Winkle to John Mills, Def.'s Ex. A to Piazza Decl. (Doc. No. 51-1),[5] and an email from the same representative forwarding a voicemail from a Neptune shareholder in which the shareholder appears to complain of unanswered calls, see October 26, 2020 Email from Scott Van Winkle to John Mills, Def.'s Ex. B to Piazza Decl. (Doc. No. 51-1); Piazza Decl. ¶ 7.[6]

In sum, the court cannot say, at this stage and based on the thin factual record before it, that ICR has met its burden of proving that there is no genuine issue of

---

[5] Piazza has testified that Van Winkle was "initially identified" as ICR's investor relations representative to Neptune "under the Consulting Agreement", see Piazza Decl. ¶ 4, and the attached email Exhibits appear to confirm that Van Winkle remained ICR's investor relations representative to Neptune during the relevant period. Accordingly, most of Van Winkle's September 2020 email would almost certainly be admissible under the party-opponent hearsay exception, see Fed. R. Evid. 801(d)(2)(D), and potentially under a state of mind exception, see id. at 803(3). The email, viewed in the light most favorable to Neptune, could constitute evidence that, by September 2020, ICR was no longer performing its responsibilities with respect to investor relations. See Consulting Agreement, Attach. 1 to Nicholas Decl., Pl.'s Ex. A, at 1-2 (Doc. No. 42-2) (enumerating various contractual obligations related to investor relations).

[6] The October 2020 email would be admissible under the party-opponent exception, see Fed. R. Evid. 801(d)(2)(D), and parts of Piazza's testimony as to the contents of the underlying voicemail may be admissible under the present sense impression exception, see Fed. R. Evid. 803(1); Piazza Decl. ¶ 7 (testimony from Piazza that the shareholder left a voicemail stating that he would like a call back and was calling for "the third [time] today"). As such, for purposes of summary judgment, the court will not exclude the email from its consideration. In turn, the email provides some additional circumstantial evidence that, when viewed in the light most favorable to Neptune, may provide an additional basis upon which a reasonable jury could find that ICR did not substantially perform its contractual obligations regarding investor relations. See Consulting Agreement at 1-2 (listing contractual obligations related to investor relations).

material fact as to whether it substantially performed its contractual obligations during the relevant period. If, at trial, ICR shows by a preponderance of the evidence that it performed its contractual obligations, and Neptune fails to offer testimony from a witness with personal knowledge or otherwise admissible evidence to dispute this showing, ICR may be entitled to a directed verdict as to Count One. At this juncture, however, the court reaffirms its conclusion that summary judgment as to ICR's breach of contract claim is not appropriate.

Finally, ICR appears to ask this court to reassess its prior reading of <u>Weiss v. Smulders</u>, primarily citing policy considerations. <u>See</u> Pl.'s Mot. at 7-8 (citing 313 Conn. 227, 363 (2014)). Although the court understands plaintiff's policy arguments, plaintiff does not point to any controlling law or data that this court overlooked in its original analysis of <u>Weiss</u>. The court reaffirms its prior conclusion that <u>Weiss</u> is distinguishable, both factually and legally, from the case at bar. <u>See</u> Ruling at 7-11.

The court therefore finds that ICR has not shown that the court committed clear error or overlooked controlling decisions or data in its prior Ruling, nor otherwise issued a Ruling that should be reconsidered.

For the reasons stated above, ICR's Motion for Reconsideration (Doc. No. 61) is denied.

**SO ORDERED.**

Dated at New Haven, Connecticut this 22nd day of April 2024.

                                                    /s/ Janet C. Hall
                                                    Janet C. Hall
                                                    United States District Judge